IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ADAM SHELTON, JR.,

    Petitioner,                   No. CIV S-07-0172 FCD GGH P

    vs.

MIKE KNOWLES, Acting Warden,

    Respondent.                ORDER

_____/

Introduction

        Petitioner, a state prisoner proceeding with appointed counsel, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is petitioner's motion for an evidentiary hearing, filed on 8/30/07 ( Docket #23), to which respondent filed an opposition on 9/27/07 (Docket # 25), after which petitioner elected not to file a reply.  The hearing date on the evidentiary hearing motion, after having been re-set by the parties at least three times, was vacated from the court's calendar by Order, pursuant to a stipulation of the parties that the matter be submitted on the papers.  See Stip and Order, filed on 6/02/08 (Docket # 39).

\\\\\

\\\\\

This matter now proceeds on the first amended petition, filed on 8/10/07,[1] the original petition having been filed on 1/29/07. Petitioner was convicted of second-degree commercial burglary (count 1) and grand theft (count 2) and sentenced to a term of 31 years to life in 2005. First Amended Petition (FAP), p.1. Petitioner sets forth the following grounds for relief: 1) insufficient evidence to sustain the verdict on both counts; 2) denial of due process by prosecution's failure to provide complete, verifiable Comp USA Store surveillance footage to defense before trial; 3) ineffective assistance of counsel when trial counsel failed to insure petitioner timely obtained missing surveillance footage; 4) where trial court granted prosecution's request for consciousness of guilt jury instruction, petitioner was denied due process when his counsel's request to argue petitioner was fleeing because he was potentially subject to a three-strikes case; 5) 31 year sentence violates Eighth Amendment's bar against cruel and unusual punishment. FAP, pp. 7-10. Petitioner filed a supporting memorandum on 2/08/08. Respondent's answer was filed on 4/24/08. Petitioner's traverse was filed on 5/09/08.

Factual Background

The underlying factual circumstances of this case have been set forth in the unpublished Third District Court of Appeal decision, People v. Shelton, 2006 WL 701147 * 1-2 (Cal. App.3rd Mar. 21, 2006):[2]

> A few minutes before 9:00 p.m. on April 20, 2004, employees of the Comp USA store in Roseville were preparing to close for the evening when an alarm sounded, signaling the rear emergency exit door had been opened. Employees had been warned about a "rash of thefts" from Comp USA stores in the region involving people "grabbing equipment and running out the back door of the store."
>
> Employee Jonathan Steel went out the front door to the north side of the store and saw defendant behind a dumpster, crouching down by a pallet and looking at the rear emergency exit door.

---

[1] A signed copy of the petition was filed on 8/24/07. All claims of the amended petition have been exhausted. See Docket # 29, & # 30, p. 6.

[2] See also, Opposition to Motion for Evidentiary Hearing, which attaches a copy of the unpublished Third District Appellate Court opinion at Docket # 25-2, as well as Appendix A to the Amended Petition, Docket # 30-2.

       Meanwhile, employees Richard Robinson and Kevin Fuller went to the rear emergency exit door and found it had been propped open. Robinson "saw [defendant's] head peeking up above the dumpster wall a couple of different times...." Robinson had seen defendant in the store within 10 minutes of closing "moving toward the back of the store." He did not see defendant leave through the front door of the store.

       Defendant started walking toward Sunrise Boulevard. Robinson and Fuller followed defendant, telling him to "stop" because they "needed to speak with him and ask him some questions." Defendant continued walking, alternating between a "fast or a brisk walk and a slow jog." Fuller called 911 on his cellular phone as they continued to follow defendant, who had approached the Eureka Auto Mall and scaled a four-and-a-half to five foot wall.

       Roseville Police Officer David Flood arrived at the entrance to the auto mall and saw defendant walking toward the sidewalk. He relayed this information to Officer Jerry Fuhrman who was in his police car. Officer Fuhrman detained defendant.

       Back at Comp USA, Steel had found three computer monitors behind the dumpster. They were lightweight and easy to carry and had been stored near the rear emergency exit door.

       Officers Michael Pendergraft and Darin DeFreece viewed Comp USA's surveillance videotape from that evening. The camera was able to capture individuals leaving by the front door but not by the back door. There was a man on the videotape who entered through the front door as the store was getting ready to close and walked toward the back of the store within 45 seconds. The man never exited the front door.

       Officer DeFreece was present when defendant was arrested. In court, he identified the man on the videotape as defendant based on "the totality of the circumstances"-"the style of [defendant's] hat," the color and style of his clothing, his ethnicity, his height and weight, and his mannerisms.

Motion for an Evidentiary Hearing

       Petitioner's counsel identified claims 2 and 3 (the film footage claims) as having contested underlying facts for which the state courts have not permitted an evidentiary hearing. Motion, Docket # 23. In the motion itself, petitioner does not set forth within the motion the contested facts underlying these claims, instead simply referencing the amended petition. Motion, p. 2. Respondent points out, that in addition to failing to clarify the putative contested

facts within the motion, not only have there been no evidentiary hearings in state court, but that it appears that petitioner never asked for one. Opposition (Opp.), p. 5, Docket # 25.

<u>Standards for an Evidentiary Hearing</u>

The availability of evidentiary hearings in AEDPA habeas cases has contracted somewhat. The Supreme Court has recently opined on the standards for granting an evidentiary hearing in <u>Schriro v. Landrigan</u>, __U.S.__, 127 S. Ct. 1933, 1939-1940 (2007), reversing <u>Landrigan v. Schriro</u>, 441 F.3d 638, 650 (9th Cir. 2006) (en banc).

<u>Schriro</u> first described the familiar test for granting an evidentiary hearing: that if the factual allegations were to be proved, petitioner would be entitled to relief. See <u>Alberni v. McDaniel</u>, 458 F.3d 860, 873 (9th Cir. 2006).[3] However, in determining whether relief could be granted, the federal court must apply the AEDPA deferential standards to legal and factual questions necessarily reached by the state courts which might obviate the need for an evidentiary hearing. <u>Schiro</u>, 127 S. Ct. at 1939-40. Thus, for example, if the reasons for counsel's actions were at issue, but under deferential standards, the court could not find prejudice, no evidentiary hearing would be necessary. Similarly, if the state court had made factual findings on the issue at bar, no evidentiary hearing could be held unless petitioner's proffer would constitute clear and convincing evidence. Importantly, petitioner must have attempted to have developed in the state courts the facts he desires to present in federal court. <u>Id</u>. at footnote 1. In addition, if the record refuted the applicant's allegations, i.e., petitioner was making allegations at odds with the established facts of the record, he would not be permitted an evidentiary hearing unless such new facts would clearly and convincingly rebut the record. Generally phrased allegations, or the

---

[3] The Ninth Circuit in <u>Landrigan</u> had reduced the test even further – "[w]e conclude Landrigan has alleged facts that, if demonstrated to be true, present a *colorable* claim that he received ineffective assistance of counsel..... <u>Id</u> at 650 (emphasis added). Thus, district courts were to hold evidentiary hearings not only in cases where the facts, if proven, would entitle the petitioner to relief, but in any case where the petitioner had "surpassed the relatively 'low bar' of alleging a colorable claim for relief." <u>Id</u>. Under such a test, evidentiary hearings would be required in nearly every habeas case presented to federal court in which ineffective assistance or some other extra-record claim was made.

failure to submit a proffer of available, specific proof will not clearly and convincingly rebut the record.

If a petitioner "failed to develop the factual basis for a claim" in state court, the federal court "shall not hold an evidentiary hearing on the claim" unless the petitioner can show that one of two narrow exceptions is applicable. 28 U.S.C. § 2254(e)(2). Whether a petitioner failed to develop a claim in state court turns on whether the petitioner exhibited a lack of diligence or some greater fault in state court. Williams v. Taylor, 529 U.S. 420, 421, 120 S.Ct. 1479 (2000). Ordinary diligence requires that petitioner seek an evidentiary hearing in state court in the manner prescribed by state law. Williams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479 (2000).

Discussion

Respondent argues that petitioner is not entitled to an evidentiary hearing as to claims 2 and 3 because petitioner failed altogether to request an evidentiary hearing at the state court level as to these claims, a contention petitioner neither addresses nor disputes. Opp., pp. 5-6. The court's review demonstrates that while petitioner challenged the trial court's ruling that no discovery violation had occurred, petitioner proceeded only by way of direct appeal as to claims 2 and 3, and did not proceed in a state court habeas petition as to these claims, seeking an evidentiary hearing. It is undisputed that the only habeas petition that was evidently filed in this case set forth only those then-unexhausted claims, claims 1 and 4, of the first amended petition. As respondent contends, petitioner's proceeding only on a direct appeal as to the claims at issue demonstrates a lack of diligence in seeking to develop the factual basis for those claims. Opp., p. 5, quoting Williams, supra, at 437, 120 S. Ct. at 1490 ("[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law"). Thus, as respondent avers, it is inaccurate to flatly assert, as petitioner does, that the state courts "never permitted an evidentiary hearing" on the claims. Opp., p. 5, quoting Motion, at p. 2. In Bragg v. Galaza, 242 F.3d 1082, 1090 (9th Cir. 2001), cited by

respondent, petitioner therein was foreclosed from an evidentiary hearing where petitioner appealed his conviction alleging ineffective assistance of counsel based on the record, but did not move for an evidentiary hearing to resolve factual disputes nor did he, similar to petitioner herein, "take advantage of state collateral proceedings to develop the factual record before he filed his federal habeas petition." As to claim 3, the Ninth Circuit also noted that ineffective assistance of counsel claims, unlike most trial error claims, "are best presented for the first time in collateral proceedings because in collateral proceedings new trial counsel can more effectively review the record and discover information regarding trial counsel error." Id., at n. 7. Because petitioner in Bragg neither requested an evidentiary hearing nor filed a state habeas petition, he was found to have "failed to develop the factual basis of [his] claim in State court proceedings"; thus, "[d]espite concerns about gaps in the record," the Bragg Court held that AEDPA precluded a remand for an evidentiary hearing. Id., at 1090.

In this instance, there does not appear to be any dispute as to petitioner's having failed to ask for an evidentiary hearing as to these claims in state court, and this court's review of the record confirms that apparent omission, or lack of diligence. Having failed to develop the factual basis of his claim in state court, in order for this court to hold an evidentiary hearing, petitioner must show as to each of the two claims that:

> (A) the claim relies on--
>     (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>     (ii) a factual predicate could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

In claim 2, petitioner contends that he was denied due process when the prosecution failed to provide complete, verifiable Comp USA Store surveillance footage to defense before trial. Petitioner sets forth that the prosecutor presented as evidence at trial

surveillance tape that had not been previously provided to defense counsel, which claimed discovery violation constituted a Fourteenth Amendment due process violation, pursuant to Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97(1963).  FAP, p. 8.

On direct appeal, this claim was set forth as follows:

Defendant contends "the trial court committed prejudicial error by ruling there had been no discovery violation when the prosecutor failed to provid[e] complete, viewable, surveillance footage to the defense." We find no error in the trial court's ruling.

*Background*

At trial, Officer Pendergraft testified he was assigned to perform the follow-up investigation regarding the surveillance videotape obtained from Comp USA. A "multiplex recorder" was required to view the surveillance videotape. The Roseville Police Department had a multiplex recorder, the cost of which was approximately $25,000. Officer Pendergraft created six still photographs from the surveillance videotape. Comp USA employee Richard Robinson testified that the photographs showed defendant entering the store from the front and walking down the main aisle toward the back of the store.

Officer Pendergraft and another employee of the Roseville Police Department made video clips of the surveillance videotape that were played for the jury. The first clip showed the entrance of the store. The second and third clips showed a man entering the store and walking to the back, at which time he "goes off camera angle." This took "about 45 seconds." Before the surveillance videotape went "blank" and "snowy," Officer Pendergraft saw activity suggesting "there was some sort of commotion going on." At least three employees moved toward the front door with phones in hand and stepped outside and "looked in a southeast direction." The man on the videotape had not left through the front door at this point.

At the end of Officer Pendergraft's testimony and out of the jury's presence, defense counsel complained of a "discovery violation." He had never seen the portions of the videotape depicting the "commotion."

The prosecutor stated she had provided defense counsel with a copy of the original videotape but "[a]pparently the public defender's office did not have the machine to work that." The prosecution then provided the video clips and the photographs made from the surveillance videotape in "CD" format. After the CD was given to defense counsel, he did not request the videotape from the prosecutor.

The prosecutor further stated that the videotape had been booked into evidence at the Roseville Police Department and defense

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

counsel or his investigator could have requested to view the videotape on the police department's equipment.

Defense counsel responded that the prosecutor had "a duty to make [the tape] watchable."

The court ruled, "I don't see any discovery violation here. It was available. You [defense counsel] chose not to go down and look at it. That's your call. At least it was available. It was made known to you, and it was available to you."

The next day, defense counsel raised the issue of the videotape again, alleging "prosecutorial misconduct." Counsel stated he was led to believe the CD contained "the entirety of the video evidence in this case." He learned for the first time during Officer Pendergraft's "redirect" testimony the videotape never showed defendant leaving the store. Defense counsel requested an admonishment to the jury "that the prosecutor had evidence, that it was not properly disclosed to the defense and that the jury is free to consider that in their deliberations."

The prosecutor responded that the following items were provided to the defense as discovery: the property record for the Roseville Police Department listing the surveillance videotape, a copy of the multiplex videotape from the surveillance camera, and Officer Pendergraft's report reflecting the portions of the videotape in which he saw defendant in the store.

The prosecutor further explained that when defense counsel told her he did not have a machine to view the multiplex videotape, she told him she "would make every effort to get a viewable copy in a different form." When the prosecutor looked into obtaining the tape, she was told the entire tape was 16 hours long. Defense counsel then told her "he wanted the portion that showed defendant in the store." "Based on that request," the prosecutor obtained the CDs containing the video clips and still photographs and gave them to defense counsel. The prosecutor stated that the entire 16-hour videotape was available at any time for the defense to view.

The court then reiterated its prior ruling: "This is much to-do about nothing. One, there is and has been no discovery violation. You [defense counsel] are entitled to the tape. You received a copy of the tape. It was unviewable by most standard recorders. I am satisfied that with the proper recorder, it's viewable. So you had it. [¶] And anything the People furnished subsequent was really gratuitous. They didn't have to really present anything further, other than what they were going to use at trial. The CD's were just extra. [¶] Bottom line, there has been no discovery violation."

After this ruling, the portion of the videotape showing the employees walking toward the front of the store holding their cellular phones was shown to the jury.FN1 This video clip also

8

showed the store manager locking the front doors. "From that point on, [the manager] had to open and close the doors for everybody." The video clip did not show defendant exiting through the front doors.

FN1. After Officer Pendergraft's testimony, the prosecutor told the court she had been able to obtain the portion of the videotape described by Officer Pendergraft showing Comp USA employees responding to the alarm.

After the jury returned the guilty verdicts, defense counsel filed a motion for a new trial based on the alleged discovery violation. He argued that the prosecutor had a duty to provide a useable copy of the videotape and her failure to do so was prosecutorial misconduct and a denial of defendant's right to due process.

The prosecutor responded that the defense did have a copy of the videotape and that its content was inculpatory.

The court denied the motion, finding it had "heard nothing really different at this point that would change [its] mind or reverse that original opinion."

*Analysis*

On appeal, as he did below, defendant focuses on the portion of the videotape showing the "commotion" after the alarm sounded and contends the failure to provide this videotaped evidence in a format "capable of being viewed or evaluated by the defense" violated his constitutional right to due process under *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215] ( *Brad*y ), violated his state statutory right to discovery (§ 1054.1), and constituted prosecutorial misconduct. We consider each of these arguments in turn, finding no merit in any.

*Brady* requires a prosecutor to disclose exculpatory evidence to the defense. (*Brady*, *supra,* 373 U.S. at p. 87 [10 L.Ed.2d at p. 218].) Defendant claims "the undisclosed footage" was exculpatory because it "does not show the suspect ... taking the monitors." Defendant's argument misses the mark. The footage could not have shown the suspect taking the monitors because the area in which they were stored-near the rear emergency exit door-was not covered by the surveillance camera. Far from being exculpatory, the portion of the videotape showing Comp USA employees responding to the alarm tended to incriminate defendant because it helped establish defendant never left the store using the front entrance. This is because, as Officer DeFreece testified, the at-issue portion of the videotape showed the manager locking the front doors and did not show defendant being let out through the front doors. As the evidence was inculpatory, no *Brady* violation occurred.

People v. Shelton, 2006 WL 701147, at * 2-4.

9

1    If a lower state court is the court which issued a reasoned decision, the federal
2  courts look through silent denials and assume the reasoning of the lower court is the reasoning of
3  all courts.  Medley v. Runnels, 506 F.3d 857, 862-863 (9th Cir. 2007).
4    Neither in his motion, the amended petition, in the supporting memorandum, nor
5  in the traverse does petitioner's counsel clarify what precise facts are contested in this claim and
6  how an evidentiary hearing, even had petitioner been diligent in pursuing such a hearing in state
7  court, would elucidate this claim.  Petitioner does assert that "nothing in the record shows trial
8  counsel was aware that he could have used the police machine and viewed the tape at the police
9  station before trial."  Traverse, p. 10.  Petitioner protests that defense counsel had requested the
10 entire tape for viewing and was led to believe that three video clips he had received constituted
11 all the videotape evidence, and that he was not sufficiently informed that he could view the entire
12 tape at the police station.  Id.  Of course, petitioner has utterly failed to satisfy the "actual
13 innocence" prong of 28 U.S.C. § 2254(e)(21).
14   As to claim 3 herein, the Third District Court of Appeal addressed the claim as
15 follows:

> Defendant contends his trial counsel was ineffective for failing "to
> insure that he timely obtained the missing surveillance footage ."
> We disagree.
>
> The burden of proving a claim of ineffective assistance of counsel
> is upon defendant. ( *People v. Ledesma* (1987) 43 Cal.3d 171,
> 215-218.) To meet this burden, defendant must prove two things.
> First, defendant must show that his counsel's representation was
> deficient, i.e., it fell below an objective standard of reasonableness
> under prevailing professional norms. Second, defendant must show
> that counsel's deficient representation subjected the defense to
> prejudice, i.e., that there is a reasonable probability that but for
> counsel's failings, the result would have been more favorable. (
> *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694 [80
> L.Ed.2d 674, 693, 698]; *People v. Bell* (1989) 49 Cal.3d 502, 546.)
>
> Defendant's claim fails because he cannot show prejudice. The
> videotape was played for the jury and, as discussed in part I of the
> Discussion, ante, it tended to establish that defendant never left the
> store using the front doors. Moreover, even if the videotape was
> exculpatory as defendant claims, defense counsel was able to
> establish through cross-examination of Officer Pendergraft and
> recross-examination of Officer DeFreece that the surveillance

> videotape never showed defendant carrying away the computer monitors.
>
> Furthermore, there was overwhelming evidence defendant took the monitors that were found behind the dumpsters. Defendant was seen on the surveillance videotape entering the store and going directly to the back. Within 45 seconds, the alarm sounded and defendant was found crouching behind the dumpster where the monitors were located. He fled on foot and refused to stop when requested to do so by Comp USA employees who were pursuing him.
>
> Therefore, regardless of whether counsel's performance in failing to timely obtain or view the at-issue surveillance videotape footage was deficient, the claim of ineffective assistance of counsel fails because there is no reasonable probability that but for counsel's alleged failings, the result would have been more favorable.

People v. Shelton, 2006 WL 701147, at * 5-6.

In claim 3 in this court, that defense counsel was ineffective for failing to review the videotape at the police station (assuming either his constructive or actual awareness of the option), in support thereof, petitioner notes that the trial judge pointed out that it would have been obvious that the tapes provided to the defense were incomplete and that the tape was available but counsel simply did not go to the station to look at it.  Traverse, p. 10, citing RT 183-184.  Although petitioner labors to show how such an omission or failure by defense counsel worked to petitioner's prejudice, he makes no showing whatever as to how an evidentiary hearing might elucidate the factual basis of the claim.

Petitioner's failure to set forth with clarity and precision what might yet remain to be uncovered by way of an evidentiary hearing as to claims 2 and 3, and the complete omission of an offer of proof as to what might yet be established by way of such a hearing wholly undermines any basis for granting the motion.  The initial failure to develop the factual basis of these claims in state court, an issue unaddressed by petitioner, requires petitioner as a threshold matter to thread the needle, pursuant to 28 U.S.C. § 2254(e)(2)(A)(I) or (ii), set forth above, which petitioner has failed to do.

\\\\\

1  Accordingly, IT IS ORDERED that petitioner's motion for an evidentiary hearing,
2 filed on August 30, 2007 (# 23), as to claims 2 and 3 of the first amended petition is denied.
3 DATED: 11/20/08

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009/shel0172.mtn