1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ADAM SHELTON, JR.,

11                 Petitioner,              No. CIV S-07-0172 FCD CHS P

12          vs.

13   MIKE KNOWLES, Acting Warden,

14                 Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.     INTRODUCTION

17                 Petitioner Adam Shelton, Jr., a state prisoner proceeding with appointed counsel,

18   has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner attacks his

19   conviction in Placer County Superior Court, Case No. 62043144, for second degree commercial

20   burglary and grand theft.

21   II.    CLAIMS

22                 Petitioner makes the following claims:

23          A.     The evidence was insufficient to support a conviction;

24          B.     He received ineffective assistance of appellate counsel;

25          C.     The prosecutor failed to disclose evidence;

26          D.     He received ineffective assistance of trial counsel;

                                              1

1    E.    He should have been allowed to argue about 3-strikes; and

2    F.    His life sentence was cruel and unusual punishment.

3         Upon careful consideration of the record and the applicable law, the undersigned

4    will recommend that petitioner's petition for habeas corpus relief be denied.

5    III.   FACTUAL AND PROCEDURAL BACKGROUND

6         A.    Facts[1]

7         A few minutes before 9:00 p.m. on April 20, 2004, employees of
          the Comp USA store in Roseville were preparing to close for the
8         evening when an alarm sounded, signaling the rear emergency exit
          door had been opened.  Employees had been warned about a "rash
9         of thefts" from Comp USA stores in the region involving people
          "grabbing equipment and running out the back door of the store."

10        Employee Jonathan Steel went out the front door to the north side
          of the store and saw defendant behind a dumpster, crouching down
11        by a pallet and looking at the rear emergency exit door.

12        Meanwhile, employees Richard Robinson and Kevin Fuller went
          to the rear emergency exit door and found it had been propped
13        open. Robinson "saw [defendant's] head peeking up above the
          dumpster wall a couple of different times...."  Robinson had seen
14        defendant in the store within 10 minutes of closing "moving
          toward the back of the store."  He did not see defendant leave
15        through the front door of the store.

16        Defendant started walking toward Sunrise Boulevard.  Robinson
          and Fuller followed defendant, telling him to "stop" because they
17        "needed to speak with him and ask him some questions."
          Defendant continued walking, alternating between a "fast or a
18        brisk walk and a slow jog."  Fuller called 911 on his cellular phone
          as they continued to follow defendant, who had approached the
19        Eureka Auto Mall and scaled a four-and-a-half to five foot wall.

20        Roseville Police Officer David Flood arrived at the entrance to the
          auto mall and saw defendant walking toward the sidewalk.  He
21        relayed this information to Officer Jerry Fuhrman who was in his
          police car.  Officer Fuhrman detained defendant.

22        Back at Comp USA, Steel had found three computer monitors
          behind the dumpster.  They were lightweight and easy to carry and
          had been stored near the rear emergency exit door.

23        Officers Michael Pendergraft and Darin DeFreece viewed Comp
24        USA's surveillance videotape from that evening.  The camera was

25        _____

          [1] This statement of facts is taken from the March 21, 2006 opinion by the California
26    Court of Appeal for the Third Appellate District (hereinafter Opinion), filed by Respondent as
      Lodged Document No.4.

                                            2

able to capture individuals leaving by the front door but not by the back door. There was a man on the videotape who entered through the front door as the store was getting ready to close and walked toward the back of the store within 45 seconds. The man never exited the front door.

Officer DeFreece was present when defendant was arrested. In court, he identified the man on the videotape as defendant based on "the totality of the circumstances"-"the style of [defendant's] hat," the color and style of his clothing, his ethnicity, his height and weight, and his mannerisms.

/////

Opinion at 2-3.

A jury convicted petitioner of second degree commercial burglary and grand theft. Id. at 1. After he admitted that he had suffered six prior strikes, serving six prior prison terms, the trial court sentenced him to an aggregate term of 31-years to life in prison. Id.

B.     Post Trial Proceedings

        1)     State Appellate Review

        Petitioner filed an appeal with the Court of Appeal for the State of California, Third Appellate District, on June 8, 2005. Answer, Lodged Doc. 1 at 1. On March 21, 2006, that court affirmed the judgment in an unpublished decision. Answer, Lodged Doc. 4 at 20.

        Petitioner then petitioned the California Supreme Court on April 21, 2006. Answer, Lodged Doc. 5 at 1. That petition was denied on May 24, 2006. Answer, Lodged Doc. 6 at 1.

        2)     Federal Habeas Review

        On January 29, 2007, petitioner filed a federal petition for writ of habeas corpus. Counsel was appointed and filed an amended petition on August 10, 2007. On that same day counsel also filed a motion to stay pending exhaustion of state remedies. That motion was granted on October 24, 2007. On January 23, 2008, petitioner notified the court that his state remedies had been exhausted.

/////

/////

3

IV.    APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Although "AEDPA does not require a federal habeas court to adopt any one methodology," Lockyer v. Andrade, 538 U.S 63, 71 (2003), there are certain principles which guide its application.

First, the "contrary to" and "unreasonable application" clauses are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

/////

Bell v. Cone, 535 U.S. 685, 694 (2002).  It is the habeas petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law.  Woodford v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360 (2002).  It is appropriate to look to lower court

4

decisions to determine what law has been "clearly established" by the Supreme Court and the

reasonableness of a particular application of that law.  See Duhaime v. Ducharme, 200 F.3d 597,

598 (9th Cir. 2000).

Second, the court looks to the last reasoned state court decision as the basis for

the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  So long as the

state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no

matter how brief.  Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000).

Third, in determining whether a state court decision is entitled to deference, it is

not necessary for the state court to cite or even be aware of the controlling federal authorities "so

long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v.

Packer,  537  U.S. 3, 8 (2003).  Moreover, a state court opinion need not contain "a formulary

statement" of federal law, so long as the fair import of its conclusion is consonant with federal

law.  Id.

V.      DISCUSSION OF PETITIONER'S CLAIMS[2]

A.      Insufficient Evidence

1)      Description of Claim

Petitioner argues there was insufficient evidence to prove his guilt beyond a

reasonable doubt "because the evidence did not show he was the person who purportedly took

the computer monitors from the Comp USA store in Roseville."  Petition at 7.  He contends that

"the evidence only showed that, after an alarm sounded inside the Comp USA store, Mr. Shelton

---

[2] Respondent argues this claim, as well as petitioner's claim with respect to 3-strikes
argument, is procedurally defaulted.  A reviewing court need not invariably resolve the question
of procedural default prior to ruling on the merits of a claim where the issue of procedural
default turns on difficult questions of state law.  Lambrix v. Singletary, 520 U.S. 518, 524-25
(1997); see also Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004).  Under the circumstances
presented here petitioner's claims can be resolved more easily by addressing them on their
merits.  Accordingly, this report will assume that they are not procedurally defaulted.

was seen near a dumpster where an employee later reported finding three computer monitors."
Id.  He also points out that fingerprints taken from the fire door and computer monitor boxes did not match his.  Id.  Alternatively, he argues that there is no evidence to prove he entered the store with the "intent to commit larceny or any felony" because he possessed more than $150 and the placement of the monitors in the store may have "presented a target of opportunity."  Id. at 7-8.

2)    Applicable Law

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also Prantil v. State of Cal., 843 F.2d 314, 316 (9th Cir. 1988).  "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).  "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case.  Id. at 1275 & n.13.

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  If the trier of

fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. <u>McMillan v. Gomez</u>, 19 F.3d 465, 469 (9th Cir. 1994). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict. <u>United States v. Mares</u>, 940 F.2d 455, 458 (9th Cir. 1991). Thus, "[t]he question is not whether we are personally convinced beyond a reasonable doubt" but rather "whether rational jurors could reach the conclusion that these jurors reached." <u>Roehler v. Borg</u>, 945 F.2d 303, 306 (9th Cir. 1991). The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. <u>Jackson</u>, 443 U.S. at 324 n.16; <u>Chein</u>, 373 F.3d at 983.

     3)  <u>State Court Opinion</u>

    The California Court of Appeal rejected this claim finding that:

> Defendant contends his burglary conviction is not supported by substantial evidence because "there is a failure of proof ... [he] entered the establishment with intent to commit larceny or any felony."
>
> Section 459 provides that a person who "enters any ... store, ... or other building, ... with intent to commit ... larceny or any felony is guilty of burglary." The intent to commit a felony must be present at the time of entry. (<u>People v.. Sparks</u> (2002) 28 Cal.4th 71, 85, fn. 17.) Direct evidence proving the intent to commit a burglary rarely exists and such intent usually must be inferred from all the facts and circumstances disclosed by the evidence. (<u>People v. Lewis</u> (2001) 25 Cal.4th 610, 643.)
>
> Here, the "evidence, including that of defendant's conduct during and after his entry, supports a reasonable inference that the intent to commit" larceny or any felony existed at the time he entered Comp USA. (<u>People v. Holt</u> (1997) 15 Cal.4th 619, 670.) Defendant entered the store within five to 10 minutes of closing time and walked towards the back of the store. Within 45 seconds, he was outside the range of the surveillance camera and the alarm sounded. Between the time defendant entered the store and the alarm sounded, defendant never exited the front doors. Defendant was then seen crouching behind a dumpster next to three lightweight and easy to carry computer monitors that had been stored near the rear emergency exit door. Finally, he fled from employees of the store when repeatedly asked to stop. As stated in part II of the Discussion, <u>ante</u>, the evidence of defendant's guilt was overwhelming.

/////

Opinion at 13-14.

/////

        4)     <u>Discussion</u>

When analyzing a sufficiency of the evidence claim, the court applies the standard set forth in <u>Jackson</u> "with explicit reference to the substantive elements of the criminal offense as defined by state law." <u>Davis v. Woodford</u>, 384 F.3d 628, 639 (9th Cir. 2004) (quoting <u>Jackson</u>, 443 U.S. at 324). Under California law a person commits grand theft when property is taken that exceeds a value of $400. CAL. PENAL CODE § 487(a). Trial testimony established that the value of the stolen monitors exceeded $400. RT 198-200. Their theft would therefore constitute grand theft.

With respect to California's law on burglary, a person is guilty of burglary when they enter any store with the intent to commit grand theft. CAL. PENAL CODE § 459. The trial evidence showed that a man, identified as petitioner, entered the store near closing time and walked to the back. Roughly 45 seconds later the alarm sounded. Petitioner was not seen exiting the front of the store and was found hiding behind a dumpster near three computer monitors. Those monitors had been located in the back of the store near the emergency exit. Upon discovery petitioner fled from store employees.

Petitioner argues that fingerprints taken from the fire door and computer monitors "were not shown to match" his. Petition at 7. The truth however is that "the fingerprint impressions were too smudged to be used to include or exclude any particular person." RT at 153. Put another way, "it is impossible to determine who left the fingerprints on the door or the computer boxes." <u>Id.</u>

In the alternative petitioner argues that even if he did commit the theft the evidence was insufficient to prove intent at the time he entered the store because he possessed money and the theft of the monitors could have been a "target of opportunity." Petition at 7-8.

Under California law, intent "is manifested by the circumstances connected with

the offense." CAL. PENAL CODE § 21.  Here the circumstances connected with the offense show that petitioner was identified entering the Comp USA store and proceeding to the back near the computer monitors and the emergency exit.  Shortly thereafter an alarm sounded and store employees found him behind a dumpster near three computer monitors.  No evidence was submitted that the monitors were not stolen from the store.  After being approached by the employees petitioner fled.

Presented with these facts a rational jury could have found the essential elements of burglary and grand theft beyond a reasonable doubt.  Petitioner is not entitled to relief on this claim.

B.      Ineffective Assistance of Appellate Counsel

1)      Description of Claim

Petitioner argues that his appellate counsel was ineffective for failing to raise a claim on appeal.  Specifically he argues his appellate counsel violated his right to the effective assistance of counsel when he failed to "raise a meritorious insufficiency of the evidence claim on count two."  Petition at 7.

2)      Applicable Law

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Id. at  687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally, competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's

performance falls within the 'wide range of professional assistance.'" <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986) (quoting <u>Strickland</u>, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing <u>Strickland</u>, 466 U.S. at 689).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id.</u> <u>See</u> <u>also</u> <u>Williams</u>, 529 U.S. at 391-92; <u>Laboa v. Calderon</u>, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955 (9th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 697).

The <u>Strickland</u> standards apply to appellate counsel as well as trial counsel. <u>Smith v. Murray</u>, 477 U.S. 527, 535-36 (1986); <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." <u>Id.</u> Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." <u>Id.</u> <u>See</u> <u>also</u> <u>Smith v. Stewart</u>, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.") There is, of course, no obligation to raise meritless arguments on a client's behalf. <u>See</u> <u>Strickland</u>, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice). Thus, counsel is not deficient for failing

10

to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this context, petitioner must show that, but for appellate counsel's errors, he probably would have prevailed on appeal.  Id. at 1434 n.9.

3)   Discussion

For the reasons previously stated it is unlikely that an insufficiency of evidence claim would have been meritorious on appeal.  Petitioner has not shown that but for his appellate counsel's failure to raise this claim he would have prevailed on appeal and he is not entitled to relief on this claim.

C.   Failure to Disclose Evidence

1)   Description of Claim

Petitioner argues that he was denied his right to due process by the prosecutor's failure to provide a complete, viewable copy of the surveillance footage of the Comp USA store. Petition at 8.  He argues that had trial counsel been provided a viewable copy of the surveillance footage, "there is a reasonable probability that through additional preparation, a change in tactics or strategy would have resulted in a different verdict because the evidence was not strong."  Id.

2)   State Court Opinion

In rejecting this claim the California Court of Appeal provided both a factual background as well as its reasoned opinion stating:

> At trial, Officer Pendergraft testified he was assigned to perform the follow-up investigation regarding the surveillance videotape obtained from Comp USA.  A "multiplex recorder" was required to view the surveillance videotape.  The Roseville Police Department had a multiplex recorder, the cost of which was approximately $25,000.  Officer Pendergraft created six still photographs from the surveillance videotape.  Comp USA employee Richard Robinson testified that the photographs showed defendant entering the store from the front and walking down the main aisle toward the back of the store.
>
> Officer Pendergraft and another employee of the Roseville Police Department made video clips of the surveillance videotape that were played for the jury.  The first clip showed the entrance of the store.  The second and third clips showed a man entering the store

and walking to the back, at which time he "goes off camera angle." This took "about 45 seconds." Before the surveillance videotape went "blank" and "snowy," Officer Pendergraft saw activity suggesting "there was some sort of commotion going on." At least three employees moved toward the front door with phones in hand and stepped outside and "looked in a southeast direction." The man on the videotape had not left through the front door at this point.

At the end of Officer Pendergraft's testimony and out of the jury's presence, defense counsel complained of a "discovery violation." He had never seen the portions of the videotape depicting the "commotion."

The prosecutor stated she had provided defense counsel with a copy of the original videotape but "[a]pparently the public defender's office did not have the machine to work that." The prosecution then provided the video clips and the photographs made from the surveillance videotape in "CD" format. After the CD was given to defense counsel, he did not request the videotape from the prosecutor.

The prosecutor further stated that the videotape had been booked into evidence at the Roseville Police Department and defense counsel or his investigator could have requested to view the videotape on the police department's equipment.

Defense counsel responded that the prosecutor had "a duty to make [the tape] watchable."

The court ruled, "I don't see any discovery violation here. It was available. You [defense counsel] chose not to go down and look at it. That's your call. At least it was available. It was made known to you, and it was available to you."

The next day, defense counsel raised the issue of the videotape again, alleging "prosecutorial misconduct." Counsel stated he was led to believe the CD contained "the entirety of the video evidence in this case." He learned for the first time during Officer Pendergraft's "redirect" testimony the videotape never showed defendant leaving the store. Defense counsel requested an admonishment to the jury "that the prosecutor had evidence, that it was not properly disclosed to the defense and that the jury is free to consider that in their deliberations."

The prosecutor responded that the following items were provided to the defense as discovery: the property record for the Roseville Police Department listing the surveillance videotape, a copy of the multiplex videotape from the surveillance camera, and Officer Pendergraft's report reflecting the portions of the videotape in which he saw defendant in the store.

The prosecutor further explained that when defense counsel told her he did not have a machine to view the multiplex videotape, she told him she "would make every effort to get a viewable copy in a

different form." When the prosecutor looked into obtaining the tape, she was told the entire tape was 16 hours long. Defense counsel then told her "he wanted the portion that showed defendant in the store." "Based on that request," the prosecutor obtained the CDs containing the video clips and still photographs and gave them to defense counsel. The prosecutor stated that the entire 16-hour videotape was available at any time for the defense to view.

The court then reiterated its prior ruling: "This is much to-do about nothing. One, there is and has been no discovery violation. You [defense counsel] are entitled to the tape. You received a copy of the tape. It was unviewable by most standard recorders. I am satisfied that with the proper recorder, it's viewable. So you had it. And anything the People furnished subsequent was really gratuitous. They didn't have to really present anything further, other than what they were going to use at trial. The CD's were just extra. Bottom line, there has been no discovery violation."

After this ruling, the portion of the videotape showing the employees walking toward the front of the store holding their cellular phones was shown to the jury. This video clip also showed the store manager locking the front doors. "From that point on, [the manager] had to open and close the doors for everybody." The video clip did not show defendant exiting through the front doors.

After the jury returned the guilty verdicts, defense counsel filed a motion for a new trial based on the alleged discovery violation. He argued that the prosecutor had a duty to provide a useable copy of the videotape and her failure to do so was prosecutorial misconduct and a denial of defendant's right to due process.

The prosecutor responded that the defense did have a copy of the videotape and that its content was inculpatory.

The court denied the motion, finding it had "heard nothing really different at this point that would change [its] mind or reverse that original opinion."

*Analysis*

On appeal, as he did below, defendant focuses on the portion of the videotape showing the "commotion" after the alarm sounded and contends the failure to provide this videotaped evidence in a format "capable of being viewed or evaluated by the defense" violated his constitutional right to due process under Brady v. Maryland (1963) 373 U.S. 83 [10 L.Ed.2d 215] (Brady ), violated his state statutory right to discovery (§1054.1), and constituted prosecutorial misconduct. We consider each of these arguments in turn, finding no merit in any.

Brady requires a prosecutor to disclose exculpatory evidence to the defense. (Brady, supra, 373 U.S. at p. 87 [10 L.Ed.2d at p. 218].) Defendant claims "the undisclosed footage" was exculpatory

13

because it "does not show the suspect ... taking the monitors."
Defendant's argument misses the mark. The footage could not
have shown the suspect taking the monitors because the area in
which they were stored-near the rear emergency exit door-was not
covered by the surveillance camera. Far from being exculpatory,
the portion of the videotape showing Comp USA employees
responding to the alarm tended to incriminate defendant because it
helped establish defendant never left the store using the front
entrance. This is because, as Officer DeFreece testified, the at-
issue portion of the videotape showed the manager locking the
front doors and did not show defendant being let out through the
front doors. As the evidence was inculpatory, no <u>Brady</u> violation
occurred.

***

In summary, the prosecutor did not commit <u>Brady</u> error by failing
to provide the defense with viewable footage of the at-issue
portion of the videotape because it was not exculpatory. The
prosecutor also did not violate her discovery obligation under
section 1054.1 in failing to provide the surveillance videotape in
viewable format. Finally, the prosecutor did not commit
misconduct in her handling of the surveillance videotape.

Answer, Lodged Doc. 4 at 4-11.

      3)    <u>Applicable Law</u>

In <u>Brady v. Maryland</u>, the United States Supreme Court held "that the suppression by

the prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

the prosecution." 373 U.S. at 87; <u>see also</u> <u>Bailey v. Rae</u>, 339 F.3d 1107, 1113 (9th Cir. 2003).

There are three components of a <u>Brady</u> violation: "[t]he evidence at issue must be favorable to

the accused, either because it is exculpatory, or because it is impeaching; the evidence must have

been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

<u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999); <u>see</u> <u>also</u> <u>Banks v. Dretke</u>, 540 U.S. 668, 691

(2004); <u>Silva v. Brown</u>, 416 F.3d 980, 985 (9th Cir. 2005). In order to establish prejudice, a

petitioner must demonstrate "'there is a reasonable probability' that the result of the trial would

have been different if the suppressed documents had been disclosed to the defense." <u>Strickler</u>,

527 U.S. at 289. The question is not whether petitioner would more likely than not have

received a different verdict with the evidence, but whether "in its absence he received a fair trial,

understood as a trial resulting in a verdict worthy of confidence." Id. (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)); see also Silva, 416 F.3d at 986 ("a Brady violation is established where 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'")

4)      Discussion

Petitioner argues that "[t]he full video did not show the facial features of the suspect, nor did it show the suspect taking or touching the monitors." Petition at 8. That does not establish that the videotape was exculpatory. It was impossible for any recording to show the theft of the monitors because that area was not monitored by a surveillance camera. RT at 161. With respect to the video's failure to show the suspect's facial features, the video in dispute is the source of the still pictures and video clips shown at trial and used to identify petitioner. Wether other segments of the video do not show the suspects facial features is irrelevant. Petitioner was identified as the suspect based on images from the videotape. Thus the evidence contained on the videotape is neither exculpatory nor impeaching, and therefore is not favorable to petitioner.

Further, the prosecutor went beyond the duty to disclose by providing both a complete copy of the tape and a sampling of relevant portions of video on CD. As the trial court told petitioner's trial counsel:

> You received a copy of the tape. It was unviewable by most standard recorders. I am satisfied that with the proper recorder, it's viewable. So you had it. And anything the People furnished subsequent was really gratuitous. They didn't have to really present anything further, other than what they were going to use at trial. The CD's were just extra.

/////

RT at 236. There was no suppression of evidence.

Finally petitioner argues that had counsel viewed the videotape "there is a reasonable probability that through additional preparation, a change in tactics or strategy would have resulted in a difference verdict because the evidence was not strong." Petition at 8. He does not

15

provide any details as to what changes there could have been to the tactics or strategy.

Even if counsel would have changed tactics or strategy to a degree that would have altered the verdict "[t]he question is not whether petitioner would more likely than not have received a different verdict with the evidence, but whether "in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Strickler, 527 U.S. at 289. (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). The failure to view the entirety of the videotape in no way impacts confidence in the verdict. The trial process was fair, presented the jury with all relevant evidence, and the jury reached a verdict supported by that evidence.

Petitioner is unable to show that the alleged discovery violation presents any of the three necessary components of a Brady violation and he therefore is not entitled to relief on this claim.

D.    Ineffective Assistance of Trial Counsel

1)    Description of Claim

Petitioner argues that he received ineffective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments. Petition at 9. Specifically he argues that his trial counsel failed to review the entirety of the surveillance videotape. Id. He argues that if his trial counsel had reviewed the entire videotape he "could have emphasized more effectively that Mr. Shelton could not be identified anywhere in the tape and that the African-American in the tape was never seen touching or taking the monitors." Id.

2)    State Court Opinion

In rejecting this claim the California Court of Appeal stated:

> The burden of proving a claim of ineffective assistance of counsel is upon defendant. (People v. Ledesma (1987) 43 Cal.3d 171, 215-218.) To meet this burden, defendant must prove two things. First, defendant must show that his counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms. Second, defendant must show that counsel's deficient representation subjected the defense to prejudice, i.e., that there is a reasonable probability that but for counsel's failings, the result would have been more favorable.

16

(Strickland v. Washington (1984) 466 U.S. 668, 687-688, 694 [80 L.Ed.2d 674, 693, 698]; People v. Bell (1989) 49 Cal.3d 502, 546.)

Defendant's claim fails because he cannot show prejudice. The videotape was played for the jury and, as discussed in part I of the Discussion, *ante*, it tended to establish that defendant never left the store using the front doors. Moreover, even if the videotape was exculpatory as defendant claims, defense counsel was able to establish through cross-examination of Officer Pendergraft and recross-examination of Officer DeFreece that the surveillance videotape never showed defendant carrying away the computer monitors.

Furthermore, there was overwhelming evidence defendant took the monitors that were found behind the dumpsters. Defendant was seen on the surveillance videotape entering the store and going directly to the back. Within 45 seconds, the alarm sounded and defendant was found crouching behind the dumpster where the monitors were located. He fled on foot and refused to stop when requested to do so by Comp USA employees who were pursuing him.

Therefore, regardless of whether counsel's performance in failing to timely obtain or view the at-issue surveillance videotape footage was deficient, the claim of ineffective assistance of counsel fails because there is no reasonable probability that but for counsel's alleged failings, the result would have been more favorable.

Answer, Lodged Doc. 4 at 11-13.

        3)      Applicable Law and Discussion

As previously discussed, in order to show ineffective assistance of counsel a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

Petitioner argues that he was prejudiced by his trial counsel's failure to view the entire videotape prior to trial because had trial counsel viewed the footage he could have "emphasized more effectively that Mr. Shelton could not be identified anywhere in the tape" and that there is no video showing him taking the monitors. Petition at 9.

17

During questioning petitioner's trial counsel got Officer Pendergraft to admit that he could not identify petitioner as the subject in the surveillance footage. RT at 168. Counsel also got Officer Pendergraft and Officer DeFreece to admit that the video did not show petitioner stealing the monitors. RT at 170-71, 268-69. Additionally, trial counsel used the videotape evidence to challenge the validity of Officer DeFreece's identification of petitioner as the man seen entering the store. RT at 260-64.

Petitioner's trial counsel used the relevant portions of the surveillance footage to undermine the identification of petitioner as the perpetrator of the alleged crime and to establish that he was not seen taking the monitors. It is difficult to imagine that trial counsel could have more effectively used the videotape. Effectiveness aside, there is no evidence that petitioner suffered any prejudice as trial counsel used the videotape to raise the relevant challenges to his identification as the suspect. He therefore has failed to establish prejudice and is not entitled to relief on this claim.

E.      Argument Relating to "3-Strikes"

        1)      Description of Claim

Petitioner argues that because the prosecutor was granted a consciousness of guilt jury instruction he should have been able to argue to the jury that he was subject to a "3-strikes penalty" to explain his flight when confronted. Petition at 9; Memorandum of P&A's at 9.

In arguing this issue trial counsel conceded that "under state law I can't mention it's a strike case." RT at 25. After the trial judge denied this request, trial counsel acknowledged that the ruling reflected "the state of the law." RT at 29. He then went on to note his objection based on a violation of petitioner's federal due process rights, which is the claim petitioner raises here. Id.; Mem. at 9.

        2)      Applicable Law and Discussion

Under California law, "[a] defendant's possible punishment is not a proper matter for the jury's consideration in determining guilt or innocence." People v. Allison, 48 Cal. 3d 879,

892 (1989).  See also People v. Honeycutt, 20 Cal.3d 150, 157 n.4 (1977); People v. Nichols, 54 Cal. App. 4th 21, 24-26 (1997) (trial court was not required to inform jury of defendant's potential sentence in "three strikes" case, and trial court properly instructed jury not to consider issue of punishment); People v. Baca, 48 Cal. App. 4th 1703, 1707-08 (1996) (same).  Thus, as acknowledged by trial counsel, the evidence of petitioner's strike status was not admissible under state law.  A state law justification for the exclusion of evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused."  United States v. Scheffer, 523 U.S. 303, 308 (1998).

Petitioner may argue that he was not requesting to admit evidence or to have the jury consider his sentence but simply to have the ability to argue the issue in defense of his flight. Inherent in his argument however would necessarily be the evidence that he was subject to a third strike, thereby implying to the jurors that their conviction might result in his sentencing in a "three strikes" case.  That is prohibited under California law and was not presented to the jury in any of the trial evidence.  Petitioner does not argue that the prohibition was arbitrary or disproportionate or that it infringed upon petitioner's weighty interest.  Petitioner instead argues that the ruling violated his right to due process.

Where a trial court's ruling "so infected the trial with unfairness" the resulting conviction violates due process.  Thomas v. Hubbard, 273 F.3d 1164, 1179 (9th Cir. 2001), overruled on other grounds by Payton v. Woodford, 299 F.3d 815, 828 n.11 (9th Cir. 2002). The analysis for determining whether a trial is "so infected with unfairness" as to rise to the level of a due process violation is similar to the analysis used in determining, under Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious effect" on the outcome.  See Thomas, 273 F.3d at 1179.

There is no evidence of record that petitioner's trial was in anyway unfair.  The argument that the jury would have reached a different verdict had they known petitioner fled

because he was facing a third strike is mere speculation. It is just as likely that the knowledge that petitioner was a multiple felon would have prejudiced the jury.

Regardless of the issue of flight, the state's other evidence was substantial and included videotape, witness identification and petitioner's proximity to the stolen monitors immediately after the theft. The trial court's decision was not unfair and did not have a substantial or injurious effect on the outcome of the trial. Petitioner is therefore not entitled to relief on this claim.

F.    Cruel and Unusual Punishment

1)    Description of Claim

Petitioner argues that his sentence of 31-years to life violates the Eighth Amendment's bar against cruel and unusual punishment. Petition at 10. He reasons that while he "admittedly has a bad prior record with multiple felonies over a number of years" most of those felonies are "theft type crimes." Id.

2)    State Court Opinion

The California Court of Appeal rejected this claim stating:

> Defendant is a 48-year-old man who began committing crimes as a 16-year-old juvenile and has an abysmal record as a habitual criminal offender. In March 1973, he was committed to the California Youth Authority for vehicle theft and driving without a license. He was paroled in October 1973. In July 1975, he was convicted of misdemeanor vehicle theft and sentenced to probation. In January 1976, he was convicted of burglary and vehicle theft and sentenced to two years in county jail. In November 1977, he again was convicted of vehicle theft and sentenced to three years probation.
>
> After these convictions, defendant amassed 10 felony convictions in 13 years. In June 1978 and again in September 1978, he was convicted of first degree burglary and sentenced to prison. He was released on parole in September 1980. In September 1981, he was convicted of two counts of first degree burglary, found in violation of parole, and returned to prison. He was released on parole in December 1984. In April 1985 and again in December 1985, he was convicted of second degree burglary and returned to prison. He was released on parole in April 1986. In August 1987, he was convicted of possession of cocaine and returned to prison. He was released on parole in August 1989. In May 1990, he was

20

convicted of first degree burglary, second degree burglary, and grand theft and sentenced to prison for 24 years eight months. He was released on parole on March 11, 2004 and committed the instant crimes five weeks later. As this record shows, defendant has not been able to remain free of custody for more than 16 months as an adult.

Defendant emphasizes the nature of his present offenses, which he characterizes as "nonviolent shoplifting crimes," and presents this as a factor demonstrating that his sentence constitutes cruel or unusual punishment. We are not persuaded. "Society's interest in deterring criminal conduct or punishing criminals is not always determined by the presence or absence of violence." (People v. Cooper (1996) 43 Cal.App.4th 815, 826.) "Under the three strikes law, defendants are punished not just for their current offense but for their recidivism. Recidivism in the commission of multiple felonies poses a danger to society justifying the imposition of longer sentences for subsequent offenses." (Id. at pp. 823-824, citing Rummel v. Estelle (1980) 445 U.S. 263, 284 [63 L.Ed.2d 382, 397].)

\*\*\*

Turning to defendant's claim based on federal law, the Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment, but strict proportionality between crime and punishment is not required. " 'Rather, [the Eighth Amendment] forbids only extreme sentences that are "grossly disproportionate" to the crime.' " (People v. Cartwright, supra, 39 Cal.App.4th at p. 1135.)

The Supreme Court of the United States has upheld statutory schemes that result in life imprisonment for recidivists upon a third conviction for a nonviolent felony in the face of challenges that such sentences violate the federal constitutional prohibition against cruel and unusual punishment. (See Ewing v. California (2003) 538 U.S. 11 [155 L.Ed.2d 108] [25-year-to-life sentence under three strikes law for theft of three golf clubs worth $399 each]; Lockyer v. Andrade (2003) 538 U.S. 63 [155 L.Ed.2d 144] [two consecutive terms of 25 years to life for two separate thefts of less than $150 worth of videotapes]; Harmelin v. Michigan (1991) 501 U.S. 957 [115 L.Ed.2d 836] [mandatory life sentence without the possibility of parole for possession of 672 grams of cocaine]; Rummel v. Estelle, supra, 445 U.S. 263 [63 L.Ed.2d 382] [life sentence for a nonviolent recidivist whose third conviction was for obtaining $120.75 by false pretenses].)

In the present case, as we discussed in connection with his California constitutional claim, defendant's sentence is not grossly disproportionate to the crimes for which he is being punished. As a result, his Eighth Amendment claim fails as well.

Answer, Lodged Doc. 4 at 15-19.

3)      Applicable Law

In Andrade, the United States Supreme Court found that in addressing an Eighth Amendment challenge to a prison sentence, the "only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear and applicable only in the 'exceedingly rare' and 'extreme' case." Andrade, 538 U.S. at 73 (citing Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 290 (1983), and Rummel v. Estelle, 445 U.S. 263, 272 (1980)). The Andrade court concluded that two consecutive twenty-five-years-to-life sentences with the possibility of parole, imposed under California's Three Strikes law following two petty theft convictions with priors, did not amount to cruel and unusual punishment. Id. at 77; see also Ewing, 538 U.S. at 11 (holding that a sentence of twenty-five-years-to-life imposed for felony grand theft of three golf clubs under California's Three Strikes law did not violate the Eighth Amendment).

Following the decision in Andrade, the Ninth Circuit held that a third strike sentence of twenty-five years to life in prison for a third shoplifting offense, a "wobbler" under state law[3], constituted cruel and unusual punishment. Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004). In so holding, the court relied upon the limited and non-violent nature of the petitioner's prior criminal history and the fact that the petitioner's only prior period of incarceration had been a single one-year jail sentence. Id. at 768-69. Thereafter, in Rios v. Garcia, 390 F.3d 1082 (9th Cir. 2004), another panel of the Ninth Circuit distinguished the holding in Ramirez, finding that the petitioner in Rios had a "lengthy criminal history," had "been incarcerated several times," and that the prior strikes used to enhance the petitioner's sentence had "involved the threat of violence." Id. at 1086. Finally, in Taylor v. Lewis, 460 F.3d 1093 (9th Cir. 2006), the Ninth Circuit upheld a sentence of twenty-five-years-to-life imposed for possessing 0.036 grams of

----

[3] A "wobbler" is an offense that can be punished as either a misdemeanor or a felony under applicable law. See Ferreira v. Ashcroft, 382 F.3d 1045, 1051 (9th Cir. 2004).

cocaine, where the petitioner's prior history included crimes of violence, including murder.

4)    Discussion

In this case petitioner's sentence does not fall within the type of "exceedingly rare" circumstance that would support a conclusion that his sentence violates the Eighth Amendment. Petitioner was sentenced under California's Three Strikes law substantially because of his recidivism, therefore "in weighing the gravity" of his offense for purposes of a proportionality analysis, the court "must place on the scales not only his current felony," but also his criminal history. Ewing, 538 U.S. at 29. This is not a case in which the petitioner's criminal history is comprised solely of non-violent offenses stemming from a single, dated incident and single guilty plea resulting only in a one-year jail (as opposed to prison) sentence. See Ramirez, 365 F.3d at 768-69. Rather, as noted by the California Court of Appeal, petitioner has been convicted of convicted of numerous felonies and as an adult "has not been able to remain free of custody for more than 16 months..." Answer, Lodged Doc. 4 at 16.

Although harsh, petitioner's sentence is not inconsistent with the sentences imposed in the cases set forth above. The sentence imposed was within statutory limits for the offense committed by petitioner and was not grossly disproportionate to the crime of conviction in light of his criminal history. See Andrade, 538 U.S. at 77. Under the circumstances presented by this case, the state courts' rejection of petitioner's Eighth Amendment claim was neither contrary to nor an unreasonable application of clearly established United States Supreme Court authority. He is therefore not entitled to relief on this claim.

/////

/////

VI.    CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District

23

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 30, 2009

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE